******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LACEY PEDRINI *v.* ELEANOR KILTONIC
(AC 37929)

Lavine, Beach and Bishop, Js.

*Argued October 17, 2016—officially released January 24, 2017*

(Appeal from Superior Court, judicial district of New Britain, Woods, J.)

*J. Xavier Pryor*, for the appellant (plaintiff).

*Opinion*

BISHOP, J. In this landlord-tenant case, the plaintiff, Lacey Pedrini, appeals from the judgment of the trial court returning to her $1094.81, a portion of her security deposit plus interest. On appeal, the plaintiff claims that the trial court erred by: (1) failing to award her double the amount of her security deposit pursuant to General Statutes (Rev. to 2011) § 47a-21 (d) (2); (2) failing to find that the actions of the defendant, Eleanor Kiltonic, constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and, therefore, failing to assess punitive damages and to award the plaintiff attorney's fees pursuant to § 42-110g (a) and (d); and (3) finding that the plaintiff was entitled to only a portion of her security deposit plus interest. We affirm the judgment of the trial court.

In its memorandum of decision, the court found the following facts: "On or about October 19, 2010, the plaintiff . . . and the defendant . . . entered into a written lease agreement for the residential property located at 43 Whitney Avenue, Southington, Connecticut (hereinafter 'the premises'). Upon executing the lease, the plaintiff paid a security deposit in the amount of $1590 to the defendant. The lease term was for eighteen months, with a monthly rent of $795.

"Upon the expiration of the original lease agreement, on or about April 20, 2012, the parties executed a second written lease. The second lease term was for three months at the same monthly rent as the first lease.

"On or about July 20, 2012, the plaintiff vacated the premises. Thereafter, on or about July 27, 2010, the plaintiff sent a letter to the defendant requesting the return of her security deposit and notifying the defendant of her new address.

"On or about August 17, 2012, the defendant sent a letter to the plaintiff in which the defendant stated she intended to retain [the] plaintiff's security deposit due to alleged damages to the property caused by the plaintiff. The letter contained a detailed list of expenses allegedly incurred by the defendant and deducted the security deposit from said expenses. The defendant concluded the letter by claiming the plaintiff owed her additional funds for repairs to the premises."

The plaintiff's claim against the defendant contained two counts: in count one, the plaintiff sought, pursuant to § 47a-21 (d) (2), the return of her security deposit, plus interest, and double damages; in count two, the plaintiff alleged that the defendant violated CUTPA, and sought, pursuant to §§ 42-110g (a) and (d), punitive damages, costs, and attorney's fees. The defendant filed her answer on October 3, 2012, in which she set forth special defenses, claiming that she sent the plaintiff a letter that listed the damages and informed her that she

was retaining the entirety of the security deposit. She also alleged that the plaintiff yelled and swore at her when she refused to return the security deposit. The defendant further alleged that the plaintiff and her dogs ruined the carpeting in the unit, which was installed at the beginning of the plaintiff's tenancy and had cost $1985.29. On October 4, 2012, the plaintiff filed a request to revise the defendant's special defenses. In it, the plaintiff requested that the defendant amend her special defenses to comply with Practice Book §§ 10-51 and 10-1. The defendant neither filed an objection to this request, nor amended her special defenses. On December 3, 2012, the plaintiff filed a motion for default for failure to plead, which the court, *Abrams*, *J.*, granted on January 11, 2013.

The plaintiff then filed a certificate of closed pleadings. Thereafter, a four day evidentiary hearing took place between May 24, 2013, and March 7, 2014, during which the defendant was self-represented. On July 2, 2014, the court, *Woods*, *J.*, rendered judgment for the plaintiff in the amount of $1094.81. In its memorandum of decision, the court declined to award the plaintiff double damages, attorney's fees and costs, or punitive damages. Rather, the court awarded the plaintiff the return of her security deposit plus interest, totaling $1622.36, reduced by $527.55 for a total award of $1094.81. The court found that the defendant was entitled to withhold $527.55 from the plaintiff's security deposit "for the costs of the water and sewer bills while the plaintiff occupied the premises, as well as the exterior cleanup costs." The plaintiff subsequently filed a motion for articulation, and motions for reargument, for reconsideration, and for additur. All of these motions were denied by the court. This appeal followed. Additional facts and procedural history will be set forth as necessary.

It is important to note at the outset that "[i]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 715, 829 A.2d 8 (2003). With this in mind, we turn to the plaintiff's specific claims on appeal.

I

We address first the plaintiff's claim regarding the court's failure to award her double damages pursuant to § 47a-21 (d) (2). The plaintiff argues that because the defendant wrongfully withheld her security deposit at the end of her tenancy, the court was required to award the plaintiff double damages under § 47a-21 (d) (2). We are not persuaded.

The following additional facts are relevant to our resolution of this claim. The plaintiff's first lease with

the defendant ended on April 19, 2012, and the second lease began on April 20, 2012. By agreement, the defendant retained the plaintiff's security deposit from the first lease and applied it to the second lease, which ended on July 20, 2012. On July 27, 2012, the plaintiff sent the key to the premises to the defendant and enclosed her forwarding address. On August 16, 2012, the defendant sent a letter to the plaintiff stating that she was not going to return the security deposit. She enclosed a list of damages that she alleged were caused by the plaintiff, and the cost of repair for each.[1] The damages as listed totaled $4526.99. The defendant stated in the letter that she was retaining the security deposit, which totaled $1591.64 including interest, as partial payment for the damages. She requested that the plaintiff pay the remaining $2935.35 immediately.

In denying the plaintiff's request for double damages, the court stated: "In the instant case, the plaintiff-tenant notified the defendant-landlord of her forwarding address and requested the return of her security deposit on July 27, 2012. The defendant responded with a letter, mailed on August 17, 2012, accounting for damages to the premises allegedly caused by the plaintiff. Notwithstanding whether the plaintiff actually caused said damages, the defendant satisfied the requirements of the security deposit statute by sending an accounting to the plaintiff within the required thirty day time period. As a result, the court finds that the plaintiff is not entitled to double the amount of her security deposit, plus interest. The court determines that the plaintiff is entitled to the return of her security deposit, plus interest, in the amount of $1622.36." The court also stated in its memorandum of decision that the majority of the costs included in the defendant's accounting of damages "were neither directly caused by the plaintiff, nor beyond normal wear and tear."

We first set forth our standard of review and applicable case law relevant to this claim. "We accord plenary review to the court's legal basis for its damages award. . . . The court's calculation under that legal basis is a question of fact, which we review under the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 307, 61 A.3d 1164 (2013).

At the time the plaintiff filed her action, § 47a-21 (d) (2)[2] provided in relevant part: "Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address. Within thirty days after termination of a tenancy, each landlord other than a rent receiver shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in

subsection (i) of this section after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the amount or value of any security deposit paid by such tenant . . . ."

In analyzing this statute, we have stated: "[Section] 47a-21 (d) (2) imposes liability for twice the value of any security deposit on a landlord who *violates the provisions of that subsection*. The provisions of the subsection are that within thirty days after termination of a tenancy a landlord must deliver to the terminating tenant either the full amount of the tenant's security deposit plus interest or a written notification advising the tenant of the nature of any damages suffered by [the] landlord by reason of [the] tenant's failure to comply with [the] tenant's obligations. If the landlord chooses to deliver the notification of damages, [she] must deliver, within sixty days after termination of the tenancy, a written statement itemizing the nature and amount of the damages [she] sustained along with any balance of the security deposit plus interest. . . . The court, therefore, *need only determine two factual questions to award twice the value of the security deposit under the statute*: (1) Was the security deposit returned with interest, or a written notification of damages delivered, within thirty days of the tenant's termination; and (2) if a written notification of damages was delivered, was the balance of the security deposit and a statement of damages delivered within sixty days of the termination?" (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Kufferman* v. *Fairfield University*, 5 Conn. App. 118, 121–22, 497 A.2d 77 (1985).

More recently, we have similarly stated: "Section 47a-21 (d) (2) requires, in the circumstance where the landlord does not return the entire security deposit, that the landlord return to the tenant *both* the balance of the security deposit paid . . . after deduction for any damages caused by the tenant *and* a written statement itemizing the nature and amount of such damages. . . . If a landlord does not comply with these requirements, the sanction is clear: the landlord shall be liable for twice the amount . . . of any security deposit paid . . . ." (Emphasis in original; internal quotation marks omitted.) *Carrillo* v. *Goldberg*, supra, 141 Conn. App. 309–10. For purposes of determining whether to award double damages under this statute, therefore, a court need only determine whether a landlord complied with the statutory requirements, and need not determine whether the landlord's reason for withholding the security deposit was justified.[3]

The plaintiff argues that because the court found that

she was not liable for the majority of the damages listed by the defendant, then the defendant had no legal claim to the plaintiff's security deposit, and, therefore, it was wrongfully withheld. The plaintiff then asserts that because the defendant's withholding of the security deposit was wrongful, § 47a-21 (d) (2) *requires* the court to award the plaintiff double damages. The plaintiff reads the legislature's use of the word "shall" in § 47a-21 (d) (2) to create a mandatory duty on the court to award double damages in this type of situation.[4] Because precedent does not command a reading of the statute consistent with the plaintiff's argument, we do not agree. See *Kufferman* v. *Fairfield University*, supra, 5 Conn. App. 121–22; *Carrillo* v. *Goldberg*, supra, 141 Conn. App. 309–10.

In the present case, the court found that the defendant complied with the statutory requirements, and, therefore, the sanction of double damages was not invoked. As for the first part of the *Kufferman* test, the court found, and the parties do not dispute, that the defendant sent a written notification of damages to the plaintiff within the thirty day time limitation, as provided in the statute. As for the second part of the *Kufferman* test, the court found, and the parties do not dispute,[5] that the amount of claimed damages exceeded the amount of the security deposit, and, therefore, there was no balance to return to the plaintiff. In finding that the defendant complied with the statutory requirements, the court determined that the plaintiff was not entitled to double damages, regardless of the fact that it later found the plaintiff not liable for much of the itemized damage.

Our review of the record and the relevant case law supports the court's determination that the defendant's actions complied with the statutory provisions, and, therefore, did not invoke the double damages provision. Accordingly, the court's findings were not clearly erroneous.

II

The plaintiff's second claim on appeal is that the court erred in finding that the defendant's actions did not violate CUTPA, and, therefore, the plaintiff was not entitled to punitive damages pursuant to § 42-110g (a)[6] or attorney's fees pursuant to § 42-110g (d).[7] Specifically, the plaintiff argues that the defendant's failure to comply with § 47a-21 (d) (2) is a per se CUTPA violation. We are not persuaded.

We begin by setting forth our standard of review. CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question

of fact for the trier, to which, on appellate review, we accord our customary deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *Chung Family Realty Partnership, LLC*, 125 Conn. App. 678, 699, 10 A.3d 61 (2010), cert. denied. 300 Conn. 914, 13 A.3d 1100 (2011).

Our Supreme Court has determined that CUTPA applies to residential landlord-tenant transactions. See *Conaway* v. *Prestia*, 191 Conn. 484, 493, 464 A.2d 847 (1983) (landlord's failure to obtain certificates of occupancy before leasing premises violated CUTPA). In determining whether a tenant can prevail in her claim for damages under CUTPA, the court must first find that the landlord's conduct at issue constitutes an unfair or deceptive trade practice. See *Scrivani* v. *Vallombroso*, 99 Conn. App. 645, 652, 916 A.2d 827 ("in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, as a result of this act, the plaintiff suffered an injury" [emphasis in original; internal quotation marks omitted]), cert. denied, 282 Conn. 904, 920 A.2d 309 (2007).

"In determining whether a practice violates CUTPA we use the criteria of whether a practice offends public policy or comes within some established concept of unfairness, whether the practice is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers . . . . CUTPA embraces a broader standard of conduct more flexible than traditional common-law claims and does not require proof of intent to deceive, to mislead or to defraud. . . . A violation may be established by showing either an actual deceptive practice or a practice that violates public policy." (Citations omitted.) *Muniz* v. *Kravis*, 59 Conn. App. 704, 713, 757 A.2d 1207 (2000).

In denying the defendant's request for punitive damages and attorney's fees under CUTPA, the court stated: "[T]he court finds that the plaintiff failed to establish the requisite conduct on the part of the defendant in order to trigger relief under CUTPA. In providing the plaintiff with an accounting of her security deposit and alleged damages caused to the premises, the defendant adhered to the security deposit statute. Further, the defendant ensured that the security deposit was held in an interest bearing account,[8] also required by the security deposit statute. Under these circumstances, [the] defendant has neither offended public policy, nor engaged in conduct that was unfair, immoral, unethical, oppressive or unscrupulous. In addition, [the] defendant's conduct did not cause substantial injury to the

plaintiff. Therefore, the court awards no damages pursuant to CUTPA." (Footnote added.)

On appeal, the plaintiff argues that the court erred in failing to find that the defendant violated CUTPA, and, therefore, that the plaintiff was entitled to damages. In furtherance of her argument, the plaintiff argues that the defendant's failure to comply with § 47a-21 (d) (2) is a per se CUTPA violation. Because we determined in part one of this opinion that the court was correct in determining that the defendant did not violate that statute, we do not agree with the plaintiff's argument.

Upon review of the record before us, we conclude that the plaintiff has failed to demonstrate that the court's finding that the defendant did not violate CUTPA, and, therefore, that the plaintiff was not entitled to punitive damages or attorney's fees, was not clearly erroneous.

### III

The plaintiff's third claim on appeal is that the trial court erred in reducing the amount of the security deposit by $527.55.[9] Specifically, the plaintiff claims that because the defendant did not claim a setoff or advance a counterclaim, and the defendant's special defenses were defaulted, the defendant was not entitled to withhold that amount from the plaintiff's security deposit. We are not persuaded.

The following additional facts and procedural history are relevant to this claim. In her letter to the plaintiff dated August 16, 2012, the defendant justified retaining the plaintiff's security deposit by listing fourteen items of damage, totaling $4526.99, for which she felt the plaintiff was responsible. Included in those items were: "[l]abor to pick up feces [and] mow lawn" for which she charged $150; "sewer bills" for which she charged $390.14; and "water bills" for which she charged $107.89.[10] Under the terms of the two leases between the plaintiff and the defendant, the plaintiff was obligated to pay the utilities "used or consumed on the property" during the duration of the lease agreement, including water and sewer. Additionally, under the terms of the lease, the plaintiff was obligated to "maintain the exterior of the property including mowing the lawn . . . ."[11]

At trial, the plaintiff and the defendant testified that the water and sewer companies would send a bill to the defendant's house, and the defendant would give it to the plaintiff, who would then pay the bill. The defendant testified that there were outstanding water and sewer bills that the plaintiff did not pay before moving out. The plaintiff testified that she paid all of the bills that the defendant sent to her. The defendant testified, however, that she did provide the bills to the plaintiff and the plaintiff did not pay. The defendant provided to the court copies of three bills from the Southington

Board of Water Commissioners, as well as copies of three checks from the defendant to the water company that totaled $131.07. The checks were dated July 23, August 10 and November 9, 2012, and the defendant testified that these checks were in satisfaction of the outstanding bills. The defendant also provided to the court an accounting from the Southington Sewer Department, as well as copies of three checks from the defendant to the sewer company that totaled $321.40. The checks were dated November 8, 2010, April 10, 2012, and May 5, 2012, and the defendant testified that these checks were in satisfaction of the outstanding bills.

The defendant further testified that after the plaintiff vacated the premises, she had to clean up sixty "or more" piles of dog feces from the front lawn, which took her two hours. The defendant estimated that her labor in picking up the feces cost $100. The plaintiff testified that there were only "a couple piles" of feces left when she moved out. Additionally, the defendant testified that the plaintiff had not mowed the lawn for "two months, maybe" despite the fact that the lease required the plaintiff to take care of the exterior maintenance. The defendant testified that she paid her son in cash to mow the lawn two times because it was "horrible." The plaintiff testified that she had mowed the lawn two days before moving out.

In its memorandum of decision, the court stated: "In the present case, the defendant submitted multiple exhibits during trial in an attempt to establish [the] plaintiff's liability for damages to the premises beyond normal wear and tear. Photographs of the condition of the premises were submitted by the defendant. [The] defendant also provided the court with proof of expenditures to repair the furnace, pay for the water and sewer bills, replace flooring, and cleanup the exterior of the premises, including a large amount of dog waste. After review of the evidence, the court finds that the defendant is entitled $527.55 for the costs of the water and sewer bills while the plaintiff occupied the premises, as well as the exterior cleanup costs. The court determines that the remaining damages claimed by the defendant were neither directly caused by the plaintiff, nor beyond normal wear and tear."

The plaintiff argues that the court's award to the defendant of $527.55 represents a setoff, a counterclaim, or a special defense, to which the defendant was not entitled. We disagree.

We first set forth our standard of review and applicable case law relevant to this claim. "We accord plenary review to the court's legal basis for its damages award. . . . The court's calculation under that legal basis is a question of fact, which we review under the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Carrillo* v. *Goldberg*, supra, 141

Conn. App. 307.

At the time the plaintiff filed her action, § 47a-21 (d) (1)[12] provided in relevant part: "Within the time specified in subdivisions (2) and (4) of this subsection, the person who is the landlord at the time a tenancy is terminated, other than a rent receiver, shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant . . . *less the value of any damages which any person who was a landlord of such premises at any time during the tenancy of such tenant has suffered as a result of such tenant's failure to comply with such tenant's obligations* . . . ." (Emphasis added.) General Statutes (Rev. to 2011) § 47a-21 (d) (1).

"Under the terms of a lease agreement, a landlord holds a tenant's security deposit in trust for the tenant. [A] security deposit . . . is the tenant's property and . . . the landlord holds it for the tenant's benefit subject to the tenant's fulfilling all its obligations under the lease. Indeed, a security deposit by definition is [m]oney deposited by tenant with landlord as security for full and faithful performance by [the] tenant of [the] terms of the lease, including damages to premises. *It is refundable unless the tenant has caused damage or injury to the property or has breached the terms of the tenancy or the laws governing the tenancy.*" (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Mazza*, 80 Conn. App. 155, 162, 834 A.2d 725 (2003).

The plaintiff's argument that the defendant was not entitled to deduct $527.55 from the security deposit rests on the assumption that the court allowed the deduction as a setoff for any property damage. The plaintiff cites our Supreme Court's decision in *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 590 A.2d 431 (1991) for the proposition that "[a] landlord['s] claim for property damage, like back rent claims, usually arise[s] either as part of a suit for damages or as a setoff or counterclaim to a tenant's action for return of a security deposit." The plaintiff's characterization of the court's award is mistaken. Under the lease, the plaintiff was obligated to pay the water and sewer bills, and to maintain the exterior of the property. The court heard evidence from the defendant that the plaintiff failed to comply with her obligations, and the court was entitled to credit such testimony. On the basis of the statute, the defendant was entitled to withhold damages suffered by the tenant's failure to comply with the lease agreement. The plaintiff's characterization of this amount as a setoff, counterclaim, or special damage is misplaced. The court correctly followed the dictates of § 47a-21 (d) (1) in deducting from the security deposit the damages suffered by the defendant as a result of the tenant's failure to comply with her obligations under the lease. Accordingly, the court's findings were not clearly

erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant listed the following as damage items: rent; carpet cleaning; ceiling in front bedroom; furnace and oil gauge; repair of hole in carpet; repair of holes, fill in and paint walls—entire house; repair and replace tiles in bathroom; labor to pick up dog feces and mow lawn; back storm door; front storm door; mail box and repair post; take trash left on front lawn and in crawl space to dump; sewer bills; and water bills.

[2] Section 47a-21 (d) (2) has since been amended by Public Acts 2016, No. 16-65, § 37, in ways that are irrelevant to this appeal.

[3] In reaching this conclusion, we need not determine what outcome might pertain if the court found that the landlord's itemization of damages and list of costs were merely a pretext for failure to return the security deposit, and we leave that issue for another day. In the case at hand, the plaintiff makes no such claim and we note, without deciding, that from the record, the landlord's assertion of damages, even those not proven, did not appear to be a mere pretext for her failure to return the security deposit.

[4] The plaintiff argues that the term "shall" invariably creates a mandatory duty unless the legislature specifies a contrary intention. Because we agree with the trial court that the defendant abided by the statutory requirements, we need not determine whether the use of the term "shall" creates a mandatory duty. We note, however, that the test is not as simple as the plaintiff argues. Although our Supreme Court has "often stated [that] [d]efinite words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature . . . [our Supreme Court also has] noted that the use of the word shall, though significant, does not invariably establish a mandatory duty." (Citation omitted; internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 744, 865 A.2d 428 (2005). In determining whether the use of the word "shall" connotes a mandatory duty, the test to apply is "whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 219 Conn. 473, 480–81, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1170, 117 L. Ed. 2d 416 (1992).

[5] The plaintiff does dispute, as previously stated, whether she was responsible for any of this damage, and, therefore, whether the defendant was justified in deducting the damages from the security deposit. The plaintiff does not dispute, however, that the amount listed by the defendant exceeded the amount of the security deposit.

[6] Section 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

[7] Section 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by any attorney and not on the amount of recovery. . . ."

[8] The plaintiff argues that neither party introduced "*any* evidence regarding the existence, or lack thereof, of an interest bearing account. Accordingly, [the] plaintiff finds it curious that the court would base its finding upon a nonexistent allegation, and nonexistent evidence." (Emphasis in original.) Our review of the record does reveal that the court had before it evidence of an interest bearing account.

[9] Nowhere does the plaintiff take issue with the calculation of the $527.55 awarded to the defendant. In her brief, the plaintiff argues only that the defendant was not entitled to reduce the security deposit by any amount. Prior to her appeal, the plaintiff filed a postjudgment motion for articulation, which the court denied, and in it did not move the court to articulate the

basis of the $527.55 amount.

[10] The court found that the other eleven items on the defendant's list "were neither directly caused by the plaintiff, nor beyond normal wear and tear." Therefore, we need not discuss these items. See footnote 1 of this opinion for the full list.

[11] These lease provisions were present in the lease from October 19, 2010 to April 19, 2012, and the lease from April 20, 2012 to July 20, 2012.

[12] Section 47a-21 (d) (1) has since been amended by Public Acts 2016, No. 16-65, § 37, in ways that are irrelevant to this appeal.

––––––––––––––––––––––––––