******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

*Syllabus*

The plaintiff landlord sought to recover damages for, inter alia, the defen-
dants' alleged violations of a lease agreement entered into in connection
with the rental of a furnished, single-family home. Within thirty days of
the termination of their tenancy, the plaintiff sent to the defendants an
accounting of their security deposit and the alleged damages to the
leased property, which indicated that there had been more than $50,000
in damages and that the deposit had been fully expended to cover certain
of the expenses incurred in connection therewith. The defendants filed a
counterclaim in which they alleged that the plaintiff violated the security
deposit statute (§ 47a-21) and the Connecticut Unfair Trade Practices
Act (CUTPA) (§ 42-110a et seq.). Following a bench trial, the trial court
rendered judgment in favor of the plaintiff on his complaint and on the
defendants' counterclaim, and the defendants appealed to this court.
*Held*:

1. The defendants could not prevail on their claim that the trial court erred
in rendering judgment against them for damages to the premises without
determining the age and condition of the property at the time of the
commencement of the tenancy and the relative wear and tear of the
items at the time of the termination of the tenancy: the trial court had
ample evidence before it that supported its calculation of damages,
including a comprehensive list of the damaged items and fixtures, photo-
graphs of the damage, and receipts for repairs and replacement pur-
chases; moreover, any wear and tear of the individual items was insignifi-
cant, given the scope of the documented damage; accordingly, the trial
court's damages award was not improper.

2. The defendants could not prevail on their claim that the trial court erred
in failing to render judgment in their favor on the counterclaim:

a. The trial court's finding with respect to the amount of the security
deposit paid to the plaintiff was not clearly erroneous: the lease agree-
ment, which was admitted into evidence as an exhibit at trial, substanti-
ated the court's factual finding as to the amount of the security deposit;
moreover, the defendants did not offer any documentary evidence at
trial, such as receipts or other banking records, of payments made to
the plaintiff in excess of the security deposit amount set forth in the lease.

b. The trial court's determination that the plaintiff properly provided the
defendants with a written accounting of the deductions made from the
security deposit, as required by § 47a-21 (d) (2), was not clearly errone-
ous: a comprehensive written statement prepared by the plaintiff, which
detailed the damages to the property, the costs incurred in association
therewith, and the balance of the security deposit, was introduced into
evidence at trial along with evidence that the plaintiff sent such statement
to each defendant within thirty days of the termination of their tenancy;
moreover, the remaining security deposit funds were properly applied
to the damages caused by the defendants because the costs of repairing
and replacing the damaged items, as documented in the written state-
ment, exceeded the balance of the security deposit.

c. This court declined to disturb the trial court's conclusion that the
defendants failed to establish that the plaintiff had violated § 47a-21 (h)
by failing to retain the security deposit in a separate escrow account:
the defendants discussion of the plaintiff's alleged violation of § 47a-21
(h) was limited to the foundation that they laid for their counterclaim
under CUTPA and, accordingly, this court's ability to grant relief was
conditioned on whether the plaintiff's failure to hold the security deposit
in an escrow account was a CUTPA violation; moreover, the plaintiff's
alleged conduct, even if found by the court, was not sufficiently unfair
or deceptive to constitute a CUTPA violation; furthermore, even if the
plaintiff's alleged conduct did amount to a violation of CUTPA, the
defendants were barred from recovery because they failed to satisfy the

requirements of the applicable statute (§ 42-110g (a)), as they did not put forth any evidence of an ascertainable loss stemming from the plaintiff's handling of their security deposit and they failed to show that the plaintiff misappropriated or otherwise improperly took money out of the initial security deposit.

Submitted on briefs September 20, 2021—officially released February 1, 2022

*Procedural History*

Action to recover damages for breach of a lease agreement, and for other relief, brought to the Superior Court in the judicial district of Fairfield and transferred to the Housing Session at Bridgeport, where the defendants filed a counterclaim; thereafter, the matter was tried to the court, *Spader, J.*; judgment for the plaintiff on the complaint and on the counterclaim, from which the defendants appealed to this court. *Affirmed.*

*Abram J. Heisler*, filed a brief for the appellants (defendants).

*Matthew R. Russo*, filed a brief for the appellee (plaintiff).

*Opinion*

ELGO, J. In this landlord-tenant dispute, the defendants, Jo-Ellen Kurtz, Andrew Kurtz, and Janice Levy,[1] appeal from the judgment of the trial court, rendered after a bench trial, in favor of the plaintiff, Terrance Mills Freidburg.[2] On appeal, the defendants claim that the court erred (1) in rendering judgment against them for damages to the property that they leased from the plaintiff without determining its age and condition at the commencement of the tenancy and the relative wear and tear of the items at the termination of the tenancy and (2) in failing to render judgment for the defendants on their counterclaim concerning their security deposit that they paid to the plaintiff when they entered into an agreement to lease the property. We affirm the judgment of the trial court.

The following facts, as found by the court or otherwise undisputed, and procedural history are relevant to this appeal. On January 8, 2011, the parties executed a lease agreement pertaining to real property owned by the plaintiff and located at 118 Wilton Road in Westport (property). The initial lease was for a term of one year and six months; the parties renewed the lease for several terms thereafter. When the defendants took possession, a move in inspection was conducted and a document was executed by the parties detailing various " 'luxury items' " on the premises and an associated liquidated damages amount the parties agreed on if the items were damaged. The lease agreement required an initial payment of $27,060, consisting of the first and last months' rent totaling $13,000, a $500 pet deposit, a $560 prepayment of the cost of alarm monitoring at the property for one year, and a security deposit of $13,000. On August 29, 2015, at the end of the defendants' tenancy, the plaintiff sent an accounting to the defendants of the security deposit and the alleged damages to the property. The August 29, 2015 accounting further indicated that the deposit was fully expended and that there was allegedly more than $50,000 in damages to the luxury items previously identified in the inspection document.

The plaintiff commenced the present action on December 7, 2015, alleging violations of the lease agreement and negligence on the part of the defendants. The defendants thereafter filed an answer and a special defense in which they denied liability for the causes of action set forth in the plaintiff's complaint and alleged that they had "returned the [property] in the same condition in which it was originally tendered, reasonable wear and tear excepted." The defendants also filed a two count counterclaim in which they alleged violations of the security deposit statute, General Statutes § 47a-21,[3] and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[4] In his reply, the plaintiff denied the substance of that counter-

claim.

A trial was held on October 2, 2019, at which the parties testified. The plaintiff also submitted into evidence exhibits pertaining to the property. On November 25, 2019, the court issued a memorandum of decision wherein it rendered judgment in favor of the plaintiff and awarded $25,600.77 in damages, plus postjudgment interest pursuant to General Statutes § 37-3a (a). The court noted that "the parties agreed to the items that were in the furnished home at the commencement of the lease." The court found "most of the plaintiff's claims of damages credible." The court further found that the plaintiff established to "its satisfaction $33,100.77 in damages beyond normal wear and tear at the end of a tenancy by a fair preponderance of the evidence . . . ." The court subtracted the security deposit balance of $7500 from the total cost of the damages that it found were the responsibility of the defendants.

With respect to the defendants' counterclaim, the court found that the defendants had failed to prove their claims at trial. Specifically, the court found, the defendants had not demonstrated that the security deposit they paid to the plaintiff exceeded the $13,000 security deposit requirement in the lease agreement. The court ultimately concluded that it was undisputed that the security deposit balance remaining as of August, 2015, was $7500. This appeal followed.

I

On appeal, the defendants challenge the propriety of the damages awarded by the court. They claim that the court erred in rendering judgment against the defendants for damages to the premises without determining the age and condition of the property at the commencement of the tenancy and the relative wear and tear of the items at the termination of the tenancy. They argue that the court should have factored in the age and previous wear and tear of certain damaged items when calculating the damages award. We are not persuaded.

We begin by setting forth the relevant applicable standard of review. "[O]ur appellate courts accord plenary review to the court's legal basis for its damages award. . . . The court's calculation under that legal basis is a question of fact, which we review under the clearly erroneous standard." (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, 203 Conn. App. 449, 465, 250 A.3d 696 (2021). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Autry* v. *Hosey*, 200 Conn. App. 795, 799, 239 A.3d 381 (2020).

In the present case, the court had ample evidence before it that supported the court's calculation of dam-

ages. At trial, the plaintiff testified that he surveyed the property after the conclusion of the tenancy and observed significant damage compared to what was listed in the inspection report. In addition, the plaintiff submitted into evidence photographs of damage to various appliances and portions of the property, taken shortly after the defendants vacated the premises. The plaintiff also prepared a document that catalogued the damaged items and fixtures in a comprehensive list, which, along with the corresponding receipts for repairs and replacement purchases, was entered into evidence. On our review of the record, we agree with the trial court that any preexisting wear and tear of individual items or fixtures is insignificant given the scope of the damage documented at the conclusion of the defendants' tenancy. Additionally, insofar as the defendants take issue with the court's inclusion of certain items in its damages award that were not the subject of testimony at trial, we agree with the plaintiff that the record contains ample documentary evidence to support all damages found by the court. It does not affect our analysis of the court's findings that the evidence concerning these items was not testimonial in nature. In light of the foregoing, we conclude that the court's damages award was proper.

II

The defendants also challenge the court's ruling on their counterclaim. The defendants contend that the court improperly rejected their claims that the plaintiff (1) charged an excessive security deposit as a condition of tenancy in violation of § 47a-21 (b) (1); (2) failed to properly provide to the defendants a written accounting of deductions that were made from the security deposit as prescribed by § 47a-21 (d) (2); and (3) failed to store the security deposit in a separate escrow account as mandated by § 47a-21 (h).[5] We disagree.

A

First, we address the portion of the claim in which the defendants argue that the court improperly rejected their claim that the plaintiff charged an excessive security deposit as a condition of tenancy in violation of § 47a-21 (b) (1). The defendants' claim is factual in nature, as it is focused on whether, in rejecting their claim, the court's finding with respect to the amount of the security deposit was clearly erroneous.

As a preliminary matter, we note that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. . . . The factual findings of a [trial court] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Fitzpatrick* v. *Scalzi*, 72 Conn. App. 779, 781–82, 806 A.2d 593 (2002); see also *Pedrini* v. *Kiltonic*, 170 Conn. App.

343, 347, 154 A.3d 1037 ("[i]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony" (internal quotation marks omitted)), cert. denied, 325 Conn. 903, 155 A.3d 1270 (2017).

As previously noted, in its memorandum of decision, the court concluded that the defendants had not proven the claims alleged in their counterclaim. With respect to the actual amount of the security deposit at issue, the court emphasized that "[i]t was never truly established [at trial] how much the initial payment to the plaintiff was. . . . No initial payment amount was ever established and the court cannot determine what it was." Accordingly, the court found, "based upon the lack of credible evidence otherwise," that "the security deposit was the $13,000 set forth in the lease." The lease agreement was appended to the plaintiff's complaint and was admitted into evidence as an exhibit at trial. That agreement, which was signed by all parties, states in relevant part: "The Tenant shall . . . pay the Security Deposit . . . in advance and upon the signing of this Lease in the amount of $13,000.00." That evidence substantiates the court's factual finding as to the amount of the security deposit. Moreover, the defendants did not offer any documentary evidence at trial, such as receipts or other banking records, of payments made to the plaintiff in excess of that amount.[6] We therefore conclude that the court's finding with respect to the amount of the security deposit was not clearly erroneous.

### B

Next, we address the portion of the claim in which the defendants argue that the court improperly rejected their claim that the plaintiff failed to properly provide to the defendants a written accounting of deductions that were made from the security deposit as prescribed by § 47a-21 (d) (2). As this court has explained, "[§] 47a-21 (d) (2) imposes liability for twice the value of any security deposit on a landlord who *violates the provisions of that subsection*. The provisions of the subsection are that within thirty days after termination of a tenancy a landlord must deliver to the terminating tenant either the full amount of the tenant's security deposit plus interest or a written notification advising the tenant of the nature of any damages suffered by [the] landlord by reason of [the] tenant's failure to comply with [the] tenant's obligations. If the landlord chooses to deliver the notification of damages, [she] must deliver, within sixty days after termination of the tenancy, a written statement itemizing the nature and amount of the damages [she] sustained along with any balance of the security deposit plus interest. . . . The court, therefore, *need only determine two factual questions to award twice the value of the security deposit*

*under the statute*: (1) Was the security deposit returned with interest, or a written notification of damages delivered, within thirty days of the tenant's termination; and (2) if a written notification of damages was delivered, was the balance of the security deposit and a statement of damages delivered within sixty days of the termination?" (Emphasis in original; internal quotation marks omitted.) *Pedrini* v. *Kiltonic*, supra, 170 Conn. App. 349–50.

The record before us reflects that the plaintiff provided the defendants with a comprehensive written statement, including the balance of their security deposit and summarizing the damages to the property and the associated costs incurred. That accounting was introduced into evidence at trial, as was evidence that the plaintiff sent it to each defendant within thirty days of the termination of their tenancy. Because the cost of repairing and replacing the damaged items and fixtures exceeded the remaining balance of the security deposit, as documented in the written accounting that the plaintiff timely provided to the defendants, we agree with the trial court that the remaining security deposit funds were "properly applied to the damages caused by the defendants." The defendants, therefore, cannot prevail on their claim that the court erred in not concluding that the plaintiff failed to comply with § 47a-21 (d) (2).

C

Third, we address the defendants' claim that the court improperly rejected their claim that the plaintiff failed to store the security deposit in a separate escrow account as mandated by § 47a-21 (h). We note that the court made no explicit findings concerning the plaintiff's use or nonuse of an escrow account in retaining the security deposit. Although the defendants point to the plaintiff's testimony indicating that he did not put the security deposit in an escrow account, the court specifically found that the defendants did not establish their claim by a fair preponderance of the evidence. The court was free to assess the credibility and sufficiency of that testimony and make its determination accordingly. We, therefore, must defer to the court's factual findings as laid out in the memorandum of decision and decline to disturb its conclusion that the defendants failed to establish that the plaintiff violated § 47a-21 (h) by failing to retain the security deposit in an escrow account.

Even if we were to conclude that the court improperly found that the plaintiff had not violated the statute by retaining the security deposit in an escrow account, we typically would consider which (if any) remedies were available to the defendants under § 47a-21. The defendants, however, did not request at trial any relief under the applicable provision of § 47a-21 for violations of § 47a-21 (h).[7] The extent to which the defendants address the plaintiff's alleged violation of § 47a-21 (h)

in their brief is limited to the foundation they lay for their counterclaim under CUTPA. Our ability to grant the defendants relief on this claim would thereby be conditioned on whether the plaintiff's failure to hold the security deposit in an escrow account can be shown to violate CUTPA.

"In determining whether a tenant can prevail in her claim for damages under CUTPA, the court must first find that the landlord's conduct at issue constitutes an unfair or deceptive trade practice." *Pedrini* v. *Kiltonic*, supra, 170 Conn. App. 354. "It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference." (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 472.

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]omission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some [common-law], statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Internal quotation marks omitted.) *Herron* v. *Daniels*, 208 Conn. App. 75, 94–95, 264 A.3d 184 (2021).

The defendants appear to argue that the plaintiff's alleged violations of the security deposit statute amount to per se violations of CUTPA. Aside from reciting the legal standard for a CUTPA claim, the defendants cite no case law in support of the proposition that the plaintiff's actions rose to the level of a violation of CUTPA. Indeed, such an approach would not be consonant with the long-standing principle that our analysis of CUTPA

claims depends on the particular facts of the case before us; see id., 96; see also *Pedrini* v. *Kiltonic*, supra, 170 Conn. App. 353 (alleged violation of other provision of § 47a-21 was insufficient to establish violation of CUTPA on its face); a principle no less applicable to CUTPA claims predicated on an alleged violation of § 47a-21 (h) than it is to CUTPA claims predicated on any other alleged impropriety. See *Tarka* v. *Filipovic*, 45 Conn. App. 46, 55–56, 694 A.2d 824 (landlords' violation of § 47a-21 (h) was owed to "ignorance of their obligations" and thereby did not violate CUTPA), cert. denied, 242 Conn. 903, 697 A.2d 363 (1997); cf. *Herron* v. *Daniels*, supra, 208 Conn. App. 98–99 (declining to extend holding in *Tarka* in light of "markedly different" factual findings with respect to landlord's experience dealing with rental property and "continued" § 47a-21 violations "with respect to other tenants . . . up to and through the trial"). In the absence of any findings that the plaintiff violated § 47a-21, beyond failing to hold one tenant's security deposit in an escrow account, we cannot conclude that the plaintiff's alleged conduct, even if found by the court, was sufficiently unfair or deceptive to constitute a CUTPA violation.

Additionally, even if the plaintiff's failure to hold the security deposit in an escrow account did amount to a violation of CUTPA, that alone would not entitle the defendants to damages under CUTPA. See *Scrivani* v. *Vallombroso*, 99 Conn. App. 645, 651–52, 916 A.2d 827 ("Our courts have interpreted [General Statutes] § 42-110g (a) to allow recovery only when the party seeking to recover damages meets the following two requirements: 'First, he must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he must present evidence providing the court with a basis for a reasonable estimate of the damages suffered.' . . . 'Thus, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, "as a result of" this act, the plaintiff suffered an injury. The language "as a result of" requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.' " (Citations omitted; emphasis in original.)), cert. denied, 282 Conn. 904, 920 A.2d 309 (2007). In *Herron*, this court further expanded on the requirement set forth in § 42-110g (a) as follows: "The ascertainable loss requirement [of § 42-110g] is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation. . . . [F]or purposes of § 42-110g, an ascertainable loss is a deprivation, detriment [or] injury that is capable of being discovered, observed or established. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no

need to allege or prove the amount of the actual loss. . . . Of course, a plaintiff still must marshal some evidence of ascertainable loss in support of her CUTPA allegations, and a failure to do so is indeed fatal to a CUTPA claim . . . ." (Internal quotation marks omitted.) *Herron* v. *Daniels*, supra, 208 Conn. App. 100.

The record before us reflects that the defendants have failed to put forth any evidence of an ascertainable loss stemming from the plaintiff's handling of their security deposit. The defendants made no showing that the plaintiff misappropriated or otherwise improperly took money out of the initial security deposit. In light of this, as well as the conflicting information regarding the amount of the security deposit at issue, we conclude that the defendants' failure to meet the standard set forth in § 42-110g (a) would bar them from recovery even if the court had found that the plaintiff violated CUTPA.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The record indicates that, following the commencement of this action, Jo-Ellen Kurtz legally changed her name to Jo-Ellen Levy. In addition, we note that Janice Levy was named as a defendant by virtue of her status as the guarantor of the other defendants' obligations under the lease agreement between them and the plaintiff. It is undisputed that Janice Levy never resided at the property in question.

[2] The plaintiff testified at trial that, following the commencement of this action, he legally changed his name to Terrance Mills.

[3] General Statutes § 47a-21 provides in relevant part: "In the case of a tenant under sixty-two years of age, a landlord shall not demand a security deposit in an amount that exceeds two months' rent.

* * *

"Upon termination of a tenancy, any tenant may notify the landlord in writing of such tenant's forwarding address. Not later than thirty days after termination of a tenancy or fifteen days after receiving written notification of such tenant's forwarding address, whichever is later, each landlord other than a rent receiver shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest, or (B) the balance of such security deposit and accrued interest after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any landlord who violates any provision of this subsection shall be liable for twice the amount of any security deposit paid by such tenant, except that, if the only violation is the failure to deliver the accrued interest, such landlord shall be liable for ten dollars or twice the amount of the accrued interest, whichever is greater.

* * *

"Each landlord shall immediately deposit the entire amount of any security deposit received by such landlord from each tenant into one or more escrow accounts established or maintained in a financial institution for the benefit of each tenant. Each landlord shall maintain each such account as escrow agent and shall not withdraw funds from such account except as provided in [§ 47a-21 (h) (2)]. . . . The escrow agent may withdraw funds from an escrow account to . . . retain all or any part of a security deposit and accrued interest after termination of tenancy equal to the damages suffered by the landlord by reason of the tenant's failure to comply with such tenant's obligations . . . .

* * *

"[E]ach landlord other than a landlord of a residential unit in any building owned or controlled by any educational institution and used by such institution for the purpose of housing students of such institution and their families, and each landlord or owner of a mobile manufactured home or of a mobile manufactured home space or lot or park . . . shall pay interest on each

security deposit received by such landlord . . . ."

[4] General Statutes § 42-110b provides: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

General Statutes § 42-110g (a) provides: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

[5] The defendants also claim that the plaintiff failed to provide the defendants with the interest accrued on their security deposit under § 47a-21 (i). Although the trial court did not expressly address this contention in its memorandum of decision, the court did state generally that the defendants had not proven their claims. Moreover, the court was not bound to credit testimony adduced by the defendants in support of their contention concerning the accrual of interest on the security deposit. See, e.g., *Benjamin* v. *Island Management, LLC*, Conn. , , A.3d (2021) ("[t]he trial court is not required to credit a witness' testimony"). Consequently, the defendants are not entitled to prevail on this claim.

[6] We note that the defendants do not contend that the $13,000 security deposit set forth in the lease was in some way improper under § 47a-21.

[7] At trial, the defendants requested in relevant part: "Twice the value of their deposit plus accumulated interest in accordance with the provisions of . . . § 47a-21." This refers to the remedy set forth in § 47a-21 (d) (2) (B). As discussed in part II B of this opinion, however, this remedy is available only for violations of § 47a-21 (d). See *Pedrini* v. *Kiltonic*, supra, 170 Conn. App. 349. Although § 47a-21 (k) (2) does set forth penalties for violations of § 47a-21 (h), the defendants do not reference this subsection of the statute at any point in their counterclaim.