******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

*Syllabus*

The plaintiff sought to recover the security deposit he had paid to the defendant landlord in connection with a one year lease of a single-family home. A few months after the start of the lease term, the plaintiff purchased his own home and attempted to terminate the lease, offering to vacate the premises and pay the remaining rent due under the agreement. The defendant refused the offer, and the plaintiff agreed to continue to pay rent and to fulfill his other obligations under the lease throughout the remainder of its term, despite vacating the premises. After the leasehold expired, the defendant sent the plaintiff an accounting of the security deposit, indicating that no portion of it would be returned due to unpaid rent and fees due under the lease and expenses incurred to repair alleged damages to the premises, and that the plaintiff owed the defendant additional funds for damages that exceeded the amount of the security deposit. The trial court found in favor of the plaintiff in part on his complaint and on the defendant's counterclaim, and the defendant appealed and the plaintiff cross appealed to this court. *Held*:

1. The trial court did not err when it awarded the plaintiff double damages as a result of the defendant's failure to return a portion of the security deposit: the trial court's determination that certain of the defendant's charges for damages to the premises were pretextual was not erroneous, as the court credited the plaintiff's testimony that he had hired a cleaning service after he vacated the premises and found the defendant's testimony relating to the claimed repair expenses unconvincing; moreover, although the trial court's finding that the charge for the replacement of the furnace filter was pretextual was erroneous, such finding did not undermine its conclusions regarding the disputed charges nor did it impact the judgment rendered; furthermore, the trial court's award of statutory damages equal to double the entire amount of the plaintiff's security deposit was required by the plain language of the applicable statute (§ 47a-21 (d) (2)), even though a portion of the security deposit was properly withheld.

2. The trial court did not err when it concluded that the defendant violated the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.): the trial court's finding that the defendant engaged in unethical behavior that violated the public policy of the applicable statute (§ 47a-21 (d) (2)) by withdrawing portions of the security deposit for her personal use and by assessing certain itemized damages as a pretext to avoid having to return the security deposit following the termination of the lease was supported by the record; moreover, the defendant's claim that she was not required to place the security deposit into an escrow account because she had fewer than four rental units was unavailing because the applicable statute (§ 47a-21 (k) (2)) provided an affirmative defense only to criminal penalties for the failure to maintain an escrow account, not to similar civil actions; furthermore, the evidence in the record demonstrated that the plaintiff suffered an ascertainable loss as a result of the defendant's withholding of the portion of the security deposit that was legitimately owed to him.

3. The trial court did not abuse its discretion by awarding punitive damages to the plaintiff: the trial court's findings that the defendant did not act in good faith when she assessed pretextual damages to the plaintiff and failed to place the security deposit into an escrow account and that her actions caused substantial injury to the plaintiff were not clearly erroneous and were sufficient to support an award of punitive damages; moreover, the trial court based the award on the defendant's failure to comply with her statutory obligations as a landlord, not on her breach of contract; furthermore, the amount awarded was not excessive in light of the amount in dispute, the defendant's conduct, and the trial court's stated purpose in making the award, which was to provide the defendant

with an incentive to comply with security deposit laws and to protect her future tenants.

4. The trial court did not err in holding that the plaintiff was not entitled to a return of the rental payments that he made after vacating the premises: the trial court correctly determined that, pursuant to the applicable statute (§ 47a-11a), the plaintiff did not abandon the premises prior to the end of the lease term, as he explicitly stated that he intended to fulfill his obligations under the lease, he continued to pay rent and landscaping costs for the property throughout the lease term, and he did not return the keys to the premises or request the return of his security deposit until the lease term expired; accordingly, there was no early termination of the lease.

5. The trial court did not err in denying the plaintiff's common-law claim for money had and received: the trial court's determination that the plaintiff was obligated to make monthly rental payments in accordance with the terms of the lease was supported by the record, which demonstrated that the plaintiff signed the lease, indicated that he would continue to abide by its terms, and failed to repudiate the lease during his tenancy; moreover, the record supported the trial court's conclusion that a duty to mitigate damages never arose under § 47a-11a and, accordingly, the plaintiff failed to prove that he had paid his monthly rent by mistake and that he was free from any moral or legal obligation to make the payments.

Argued April 8—officially released October 5, 2021

*Procedural History*

Action for, inter alia, the return of a security deposit, and for other relief, brought to the Superior Court in the judicial district of Fairfield, Housing Session at Bridgeport, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Spader, J.*; judgment for the plaintiff in part on the complaint and for the plaintiff on the counterclaim, from which the defendant appealed and the plaintiff cross appealed to this court. *Affirmed*.

*Alan R. Spirer*, for the appellant-cross appellee (defendant).

*Anthony J. Musto*, for the appellee-cross appellant (plaintiff).

*Opinion*

BRIGHT, C. J. In this landlord-tenant dispute over a security deposit, the defendant landlord, Linda Daniels, appeals from the judgment of the trial court, rendered following a trial to the court, in favor of the plaintiff tenant, Marc Herron. On appeal, the defendant claims that the trial court erred when it (1) awarded the plaintiff double damages pursuant to General Statutes § 47a-21 (d), due to her failure to return to the plaintiff a portion of his security deposit, (2) concluded that the her handling of the plaintiff's security deposit and her failure to return a portion of his security deposit violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (3) awarded punitive damages to the plaintiff under CUTPA.

The plaintiff cross appeals claiming that the court erred in (1) holding that he was not entitled to a return of certain rental payments because, pursuant to General Statutes § 47a-11a, he did not abandon the premises prior to June 30, 2017, and (2) denying his common-law claim for money had and received. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On May 6, 2016, the parties entered into a written lease agreement for the period of July 1, 2016 to June 30, 2017, for a monthly rental rate of $6365 plus $435 in monthly common charges for the use and occupancy of a single-family home located at 161 Morning Dew Circle in Fairfield (premises). The plaintiff provided a security deposit to the defendant in the amount of $12,730. A few months later, the plaintiff purchased a home for his family and attempted to negotiate an early termination of the lease by offering to vacate the premises and to pay the balance due under the lease.

The defendant, however, demanded that the plaintiff pay an additional $1500 each month for costs associated with the lease, including utilities, lawn care, and property maintenance. In response, the plaintiff sent an e-mail to the defendant's attorney, stating: "I will just continue the lease as is. I will not be present but will adhere to the conditions of the lease. I will provide the absolute minimal yet compliant services to the home. . . . I will pay monthly rent. I will leave water and electric on and pay those bills. I will keep thermostat at minimal level to ensure no freezing occurs. . . . I will keep the right to have minimal furniture in the home to then use when I choose." The plaintiff continued to provide some maintenance and, except for the final month, continued to meet his monthly rental obligations.

The leasehold expired on June 30, 2017, and the plaintiff timely provided the defendant with a forwarding

address so that she could return his security deposit, less the unpaid June, 2017 rent. The defendant responded with an accounting of the security deposit, indicating that no portion of the security deposit would be returned and that the plaintiff owed the defendant $1834.79. The accounting alleged that the June, 2017 rent ($6365), association fees ($435), and associated late fees ($250) were not paid and included a number of charges, totaling $7516.85, for repairs to remedy alleged damages to the premises.

The plaintiff commenced this civil action in May, 2018, seeking the return of his security deposit. The operative complaint included seven counts: breach of contract; violation of § 47a-21 (d); violation of CUTPA; conversion; civil theft; violation of § 47a-11a; and a common-law claim for money had and received. The plaintiff sought, inter alia, double damages under § 47a-21 (d) (2), and attorney's fees and punitive damages under CUTPA. The defendant denied the plaintiff's claims and filed a counterclaim for amounts due to her for damages exceeding the amount of the security deposit.

On October 21, 2019, following a one day trial to the court and the submission of posttrial briefs, the court issued a memorandum of decision in which it found in favor of the plaintiff on his claims for breach of contract, violation of § 47a-21 (d), violation of CUTPA, and conversion. The court rejected the plaintiff's remaining claims. It also concluded that, of the $12,730 security deposit, only $7429.92 properly was withheld by the defendant. The amount properly withheld included the unpaid June rent and association fees, the corresponding late charges and $379.72 for repairs.[1] The court found that the defendant's other claimed repair costs "were not supported by the defendant's testimony or attached evidence . . . ." The court further found that certain charges were "fabricated" by the defendant and found that all of the deductions from the security deposit that were disputed by the plaintiff were "pretextual." The court also found that the defendant had mishandled the plaintiff's security deposit by not keeping it segregated in a separate account, using it for her personal expenses during the term of the lease, and not accounting for accrued interest on the security deposit.

In light of its findings, the court concluded that the defendant had breached the lease agreement by withholding more of the security deposit than that to which she was entitled and concluded that the plaintiff was entitled to damages on his breach of contract claim in the amount of $5300.08 and attorney's fees of 15 percent of the amount of the damages.[2] The court nevertheless declined to award the plaintiff any damages on his breach of contract claim because it was awarding the plaintiff greater damages and attorney's fees on his other claims.

Specifically, on the plaintiff's second count, which

alleged a violation of § 47a-21 (d), the court awarded, pursuant to the statute, double damages in the amount of twice the plaintiff's security deposit and interest due thereon for the defendant's wilful failure to return the portion of the deposit to which the plaintiff was entitled. In particular, the court awarded the plaintiff $12,730, the amount of the security deposit, and $12.73 in accrued interest. The court doubled the damages, increasing the award to $25,460 and $25.46, respectively, pursuant to its conclusion that the defendant had violated § 47a-21 (d).

As to the plaintiff's third count alleging a CUTPA violation, the court held that the defendant's mishandling of the security deposit and her improper withholding of a portion of the security deposit were "inexcusable and indefensible and [left] the court with no choice but to award CUTPA and punitive damages to the plaintiff in this matter." The court concluded that it would not duplicate the damages award that it had rendered on the plaintiff's second count, but it awarded the plaintiff $19,867.13 in punitive damages, $12,625 in attorney's fees, and $811.92 in costs.

As to the plaintiff's fourth count alleging conversion, the court concluded that a conversion had occurred but that any damages that it might award would be duplicative, so it awarded none. As to the plaintiff's fifth count alleging statutory theft, the court concluded that "the defendant [did not have] the requisite specific intent to raise her conduct to a finding of statutory theft toward the plaintiff. She was negligent and careless with the plaintiff's security deposit, but the court does not find that she committed a statutory theft."

As to the plaintiff's sixth count alleging that he was entitled to a return of a portion of the rent he paid after he moved out of the premises because the defendant had failed to use reasonable efforts to rent the premises pursuant to § 47a-11a, the court found that the defendant's duty under the statute never materialized because the plaintiff never abandoned the premises before the end of the lease term. Similarly, because the plaintiff never abandoned the premises and continued to use it for storage through the end of the lease term, the court concluded that the plaintiff could not succeed on his seventh count alleging the common-law claim of money had and received.

Finally, because it had concluded that the defendant had failed to prove that she properly had kept the entirety of the security deposit, the court rendered judgment for the plaintiff on the defendant's counterclaim.

The defendant appealed and the plaintiff cross appealed.

I

THE DEFENDANT'S APPEAL

## A

The defendant's first claim is that the trial court erred in awarding the plaintiff double damages pursuant to § 47a-21 (d). The defendant presents two arguments relating to this claim. First, the defendant argues that the court erroneously determined that certain of her charges for damages to the premises were pretextual. In making this argument, the defendant does not dispute the court's conclusion that she failed to prove that the plaintiff caused the alleged damages to the premises. Instead, she argues that she complied with § 47a-21 (d) by providing the plaintiff with a list of itemized deductions from his security deposit and that her failure to prove that the deductions were justified does not constitute a violation of the statute unless those charges were pretextual. See *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 310–11, 61 A.3d 1164 (2013). She argues that the court's finding that the deductions were pretextual was clearly erroneous.

Second, the defendant argues that, even if the court's finding of pretext was not clearly erroneous, the court erred by awarding the plaintiff the entire amount of his security deposit and doubling it pursuant to § 47a-21 (d) when the plaintiff conceded that the defendant properly retained more than one half of the security deposit to cover unpaid rent, association fees, late charges, and certain repairs. The defendant argues that the plaintiff's recovery of statutory damages under § 47a-21 (d) should be limited to double the portion of the security deposit that the court determined was improperly withheld by the defendant.

In response, the plaintiff argues that the trial court's finding that almost all of the defendant's charges for damages to the premises were pretextual is not clearly erroneous. He further contends that the court's award of statutory damages equal to double the entire amount of the plaintiff's security deposit is required by the plain language of § 47a-21 (d) (2). We agree with the plaintiff.

"We accord plenary review to the court's legal basis for its damages award." (Internal quotation marks omitted.) *Pedrini* v. *Kiltonic*, 170 Conn. App. 343, 348–49, 154 A.3d 1037, cert. denied, 325 Conn. 903, 155 A.3d 1270 (2017). "The court's calculation under that legal basis is a question of fact, which we review under the clearly erroneous standard. . . . Moreover, to the extent that we must construe the salient provisions of the security deposit statute, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Carroll* v. *Yankwitt*, 203 Conn. App. 449, 465, 250 A.3d 696 (2021).

### 1

We begin by addressing the defendant's argument that the court erroneously determined that she violated § 47a-21 (d) by providing the plaintiff with an itemized

list of deductions from his security deposit that included pretextual charges.

"Section 47a-21 (d) (2) requires, in the circumstance where the landlord does not return the entire security deposit, that the landlord return to the tenant both the 'balance of the security deposit paid . . . after deduction for any damages' caused by the tenant and 'a written statement itemizing the nature and amount of such damages. . . .' If a landlord does not comply with these requirements, the sanction is clear: the landlord 'shall be liable for twice the amount . . . of any security deposit paid . . . .' " (Emphasis omitted.) *Carrillo* v. *Goldberg*, supra, 141 Conn. App. 309–10. A landlord violates the statute when the written statement itemizing deductions from the security deposit includes pretextual or fabricated charges. Id., 310. "The language of the statute allows for landlords to deduct from a tenant's security deposit actual damages, not pretextual damages." Id.

Claims of pretext are questions of fact subject to the clearly erroneous standard of review. See *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 481. "In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. . . . Moreover, [i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 775–76, 216 A.3d 830 (2019).

At trial, the following relevant evidence was presented to the court. In response to the plaintiff's request for the return of his security deposit, the defendant made the following deductions from the security deposit: (1) June, 2017 rent in the amount of $6365, (2) June, 2017 association fees in the amount of $435, (3) late charges in the amount of $250, (4) fees for cleaning in the amount of $800, (5) irrigation system repair in the amount of $190.45, (6) furnace filter replacement in the amount of $100, (7) landscaping in the amount of $1605.89, (8) lawn maintenance in the amount of $345.64, (9) vacuum hose replacement in the amount of $63.81, (10) replacement of dehumidifier in the amount of $189.27, (11) stair carpeting replacement in the amount of $2800, (12) HVAC pipe replacement in the amount $338.95, (13) HVAC repair in the amount of $244.66, and (14) plumbing repairs in the amount of $838.18. The defendant submitted evidence of invoices she paid relating to the repair, maintenance and cleaning charges.

The parties presented conflicting testimony as to

many of the defendant's itemized deductions. The defendant testified that she hired a cleaning service due to the uncleanliness of the premises, that the charge for the furnace filter replacement was a fair and reasonable charge, and that the plaintiff failed to maintain the landscaping of the premises. The defendant also testified that parts of the vacuum hose were missing after the plaintiff vacated the premises and that the carpet needed to be replaced due to an animal urine stain that she initially had noticed in July, 2017, after it was brought to her attention by a painter. The defendant stated that she had not noticed the stain prior to the painter bringing it to her attention despite having paid professional cleaners, who cleaned the premises at some point between April 30 and June 10, 2017. The defendant also testified that she did not take any photographs of the claimed damages.

On the other hand, the plaintiff testified that the condition of the premises was "almost spotless" prior to his departure in October, 2016, because he had hired a cleaner to clean the premises. He also testified that he hired a landscaping company that regularly maintained the landscaping and the lawn through the spring of 2017. The plaintiff stated that when the defendant contacted him about an issue with the landscaping of the premises, he had the landscaping company ameliorate the issue the following day. He also testified that he did not recall seeing a vacuum hose and that he had a dog but it did not urinate in the premises. The plaintiff stated that he was unaware of any plumbing issues other than the replacement of a gasket and a toilet, which he had replaced on his own accord.

Notably, the plaintiff did not dispute certain charges as justified deductions, including the charges for the June, 2017 rent, the association fees, the late fee, the furnace filter, the irrigation system, and the dehumidifier. In addition, both parties testified that there were HVAC issues predating the plaintiff's tenancy.

The court also had before it undisputed evidence that the defendant did not segregate the plaintiff's security deposit and used it regularly during the term of the lease to pay personal expenses.[3] That evidence showed that, during the term of the lease, the account in which the plaintiff's security deposit was supposed to be kept regularly had a balance below $12,730. Furthermore, the defendant testified that the account containing the plaintiff's security deposit also contained security deposits of the tenants of other rental properties she owned, from which the court concluded that "[t]he balance [in the account] should have regularly been much higher."

In its memorandum of decision, the trial court made the following relevant findings of fact. The court found that the June, 2017 rent and association fees, late charges, irrigation system repair, and the replacement

of the dehumidifier were legitimate deductions from the security deposit. Thus, the court found that charges amounting to $7429.92 were justified deductions from the plaintiff's security deposit. The court, however, found that the remaining deductions were not proven by a fair preponderance of the evidence as damages incurred during the tenancy and that the deductions were pretextual.

In particular, the court credited the plaintiff's testimony that he had hired a cleaning service when he vacated the premises and found that there was no evidence that the defendant's subsequent cleaning was for conditions beyond ordinary cleaning to re-let the premises. The court did not credit the defendant's evidence with regard to the replacement of the carpet on the stairs, finding that the carpet replacement was "wholly fabricated." Additionally, the court did not credit the defendant's evidence concerning the claimed charges for lawn maintenance, landscaping, HVAC issues, vacuum hose replacement, and plumbing maintenance. Furthermore, the court found that the defendant was "so unconvincing in her testimony that [the court had] to consider [the remaining charges] pretextual. [The defendant] was only claiming these damages to avoid returning the security deposit." The court determined that the defendant "knowingly included these items in her list because, as her bank statements demonstrate, she was not properly safeguarding her tenants' [security] deposits, and quite frankly, the court believes she had no intention of ever returning the security deposit to the plaintiff."

The defendant argues that the court's finding of pretext was clearly erroneous because she testified that the premises was in "pristine condition" when the plaintiff took possession, the repairs she undertook at the end of the lease term were necessary to restore the premises to that condition, she paid for each repair she charged to the plaintiff and those charges were reasonable and authorized by the lease agreement. Although the defendant acknowledges that the court found her testimony unconvincing, she nonetheless argues that a finding of pretext was unwarranted because the plaintiff bore the burden of proving pretext, and the plaintiff did not meet that burden simply because the court discredited the defendant's testimony. We are not persuaded.

"The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 132, 891 A.2d 133 (2006). We are not in a position to question the court's credibil-

ity finding. "[The trier of fact] is free to juxtapose conflicting versions of events and determine which is more credible." (Internal quotation marks omitted.) *Benjamin* v. *Norwalk*, 170 Conn. App. 1, 25, 153 A.3d 669 (2016).

As the defendant acknowledges, the court did not credit her testimony regarding the legitimacy of the vast majority of the claimed repair expenses. In fact, the court found her testimony so unconvincing that it led the court to infer that the charges were pretextual. Our review of the record reflects additional support for this conclusion, with one small exception, in the testimony of the plaintiff and the defendant's admitted personal use of the plaintiff's security deposit. The one exception is the $100 furnace filter replacement charge claimed by the defendant. The plaintiff testified that he accepted the furnace filter charge as an item of damage and did not dispute the validity of that charge. Thus, because the record does not contain any conflicting evidence as to whether the charge for the replacement of the furnace filter was pretextual, the trial court's finding that this charge was pretextual is clearly erroneous.

"[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Internal quotation marks omitted.) *Autry* v. *Hosey*, 200 Conn. App. 795, 801, 239 A.3d 381 (2020).

After carefully reviewing the record, we conclude that the court's erroneous finding regarding the furnace filter does not undermine our confidence in the court's determination that the disputed charges were pretextual because the record contains sufficient evidence to support the court's finding. Removing the $100 charge from the court's calculation of the portion of the security deposit improperly withheld by the defendant, there was ample evidence to support the rest of the overcharges totaling more than $5000. Furthermore, because the court's damages award was based on its calculation of statutory damages for a failure to return a security deposit in violation of § 47a-21 (d), and not on the actual amount wrongfully withheld, the court's single erroneous finding had no impact on the judgment it rendered. Therefore, we conclude that the court's erroneous finding concerning the furnace filter replacement was harmless, and the court's finding that the disputed charges were pretextual was not clearly erroneous.

2

We next address the defendant's claim that, even if the court's finding that certain items deducted from

the plaintiff's security deposit were pretextual was not clearly erroneous, the court erred in awarding double damages based on the full amount of the security deposit instead of basing the award on the portion of the deposit improperly withheld. The plaintiff argues in response that the doubling of the entire security deposit is the precise remedy called for by the plain language of § 47a-21 (d) (2). We agree with the plaintiff.

Resolution of this claim requires us to construe the language of the statute. Consequently, as previously stated, our review is plenary. See *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 465. Furthermore, when construing the language of a statute, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Maghfour* v. *Waterbury,* Conn. , , A.3d (2021).

Section 47a-21 (d) (2) provides: "Upon termination of a tenancy, any tenant may notify the landlord in writing of such tenant's forwarding address. Not later than thirty days after termination of a tenancy or fifteen days after receiving written notification of such tenant's forwarding address, whichever is later, each landlord other than a rent receiver shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest, or (B) the balance of such security deposit and accrued interest after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. *Any landlord who violates any provision of [§ 47a-21 (d)] shall be liable for twice the amount of any security deposit paid by such tenant, except that, if the only violation is the failure to deliver the accrued interest, such landlord shall be liable for ten dollars or twice the amount of the accrued interest, whichever is greater.*" (Emphasis added.)

"By its plain language, § 47a-21 (d) (2) obligates a landlord, within thirty days of the termination of the tenancy [or fifteen days after receiving written notification of such tenant's forwarding address, whichever is later], to deliver to the tenant either (a) the full amount of the security deposit or (b) any remaining balance on that security deposit after deduction for any damages suffered by [the] landlord by reason of [the] tenant's failure to comply with [the] tenant's obligations . . . . When the latter scenario is implicated, § 47a-21 (d) (2) requires the landlord to provide the tenant with a writ-

ten statement itemizing the nature and amount of such damages." (Footnote omitted; internal quotation marks omitted.) *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 467.

"[F]or purposes of determining whether to award double damages under [§ 47a-21 (d) (2)] a court need only determine whether a landlord complied with the statutory requirements, and need not determine whether the landlord's reason for withholding the security deposit was justified." (Internal quotation marks omitted.) Id., 470. "We reiterate that the plain language of that statute merely requires a landlord asserting damages stemming from noncompliance with the tenant's obligations to provide the tenant with a written statement itemizing the nature and amount of such damages." (Internal quotation marks omitted.) Id., 471.

Nonetheless, "[t]he language of the statute allows for landlords to deduct from a tenant's security deposit actual damages, not *pretextual* damages." (Emphasis added.) *Carrillo* v. *Goldberg*, supra, 141 Conn. App. 310. A landlord does not satisfy the statutory requirements of § 47a-21 (d) (2) and is subject to double damages when the landlord complies only in form with the requirement prescribed by the statute, while failing to provide the former tenant the balance of the security deposit *legitimately* owed to the former tenant. See id., 310–11 ("While the defendants complied, in form only, with the requirement that a written accounting of damages be sent to the former tenant within the time frame prescribed by § 47a-21 (d) (2) and (4), without also sending the plaintiffs the balance of the security deposit legitimately owed to them, they did not satisfy the statutory requirements. Accordingly, the defendants were subject to the doubling of damages under § 47a-21 (d) (2).").

In the present case, the court found that a portion of the defendant's claimed damages was pretextual. Thus, the defendant did not comply with the statutory requirements of § 47a-21 (d) (2) because she failed to provide the plaintiff with the balance of his security deposit that was legitimately owed to him. Consequently, because the defendant violated § 47a-21 (d) (2), she was liable for "twice the amount of any security deposit paid by [the plaintiff] . . . ." General Statutes § 47a-21 (d) (2).

The defendant's argument that the statutory damages should be limited to double the portion of the security deposit wrongfully withheld ignores the plain language of the statute. The statute plainly and unambiguously defines the statutory damages as "twice the amount of any *security deposit paid* . . . ." (Emphasis added.) General Statutes § 47a-21 (d) (2). That is precisely what the court awarded the plaintiff on the second count of his complaint. Had the legislature intended the remedy suggested by the defendant, it could have written the

statute to accomplish that purpose. It did not. Significantly, however, the legislature did limit the remedy available to a tenant when the landlord's violation of the statute is limited to the failure to deliver to the tenant accrued interest on the security deposit. In such a circumstance, the landlord is liable for only twice the amount of interest or ten dollars, whichever is greater. General Statutes § 47a-21 (d) (2). The fact that the legislature identified a particular circumstance in which the statutory damages would be limited undermines the defendant's argument that it also intended the implicit limitation she suggests.

Furthermore, that the defendant views the application of the statute to the facts of this case to be "manifestly unfair" is irrelevant to our analysis. As this court has previously noted, § 47a-21 (d) (2) "is the punitive damages portion of the security deposit statute." (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 466. It is for the legislature—not this court—to determine what the appropriate statutory penalty is for a landlord who does not fully comply with the statutory obligation to return or account for a tenant's security deposit. It is our duty to apply the plain language of the statute as written, and the language at issue here could not be clearer. Moreover, § 47a-21 (d) (2), like other statutes intended to protect tenants, is a remedial statute and must be "construed liberally in favor of those whom the legislature intended to benefit . . . ." (Citations omitted.) *O'Brien Properties, Inc.* v. *Rodriguez*, 215 Conn. 367, 373, 576 A.2d 469 (1990). Accordingly, we conclude that the court properly awarded the plaintiff twice the amount of the security deposit paid by the plaintiff.

B

Next, the defendant claims that the court erred in concluding that she violated CUTPA by (1) making pretextual deductions from the plaintiff's security deposit and (2) failing to safeguard the plaintiff's security deposit in an escrow account. The defendant argues that her itemization of damages was based on a good faith belief that she had suffered damages as a result of the plaintiff's failure to fulfill his obligation under the lease agreement to maintain the premises. In addition, the defendant argues that she was not required to maintain the security deposit in a separate escrow account, that even if she was, her failure to do so did not constitute a CUTPA violation, and that the plaintiff failed to prove that he suffered an ascertainable loss due to her conduct. We disagree.

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule

by the [F]ederal [T]rade [C]omission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some [common-law], statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . .” (Internal quotation marks omitted.) *Peterson* v. *McAndrew*, 160 Conn. App. 180, 207–208, 125 A.3d 241 (2015).

In its memorandum of decision, the court found that the defendant had “engaged in unethical, unscrupulous activity in violation of a stated public policy set forth by the Connecticut legislature and caused a substantial injury to the plaintiff.” The court concluded that the defendant’s failure to safeguard the plaintiff’s security deposit, her utilization of the security deposit for her own personal purposes, and her claiming of pretextual damages to avoid complying with § 47a-21 (d) (2) constituted a violation of CUTPA. Moreover, the court stated: “The defendant is a former Realtor and has been involved in multiple rental relationships on her properties. When asked about whether she currently maintains security deposits in a separate account she answered in the negative. This case was commenced in 2018, after reviewing pleadings and consulting with an attorney on this case, the defendant is still not following Connecticut’s security deposit laws (recall, the trial was August 29, 2019). The [trial] court has concerns for [the defendant’s] current tenants that their funds may not be secured. This utter indifference to her obligations as a landlord, when taken in context with what the court finds were pretextual damages being assessed to the plaintiff, is inexcusable and indefensible and leaves the court with no choice but to award CUTPA and punitive damages to the plaintiff in this matter. The defendant must be provided with an incentive to comply with security deposit laws and this judgment will hopefully help protect future tenants of the defendant.” (Emphasis omitted.)

“It is well settled that whether a defendant’s acts

constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference." (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, supra, 203 Conn. App. 472.

In the present case, the evidence in the record supports the court's determination that the defendant engaged in unethical and unscrupulous activity that clearly offended the public policy of the security deposit statute. In particular, the evidence supports the court's findings that the defendant utilized the plaintiff's security deposit for her personal use and assessed certain itemized damages as pretext to avoid complying with § 47a-21 (d) (2). As to the defendant's personal use of the security deposit, the defendant testified that she did not believe that she could use the funds from the account containing the security deposit for her personal use, but she also testified, and the evidence presented to the court showed, that she used funds from the account to pay her mortgage and that she transferred funds from the account to her personal account.

The defendant argues that the court should not have relied on such evidence to find a CUTPA violation because she was not required to maintain the security deposit in a segregated escrow account and her failure to do so does not constitute a CUTPA violation. We are not persuaded.

"Whether a defendant is subject to CUTPA and its applicability . . . are questions of law. . . . [If] a question of law is presented, review of the trial court's ruling is plenary, and this court must determine whether the trial court's conclusions are legally and logically correct, and whether they find support in the facts appearing in the record." (Citation omitted; internal quotation marks omitted.) Id.

Section 47a-21 (h) (1) requires that "[e]ach landlord shall immediately deposit the entire amount of any security deposit received by such landlord from each tenant into one or more escrow accounts established or maintained in a financial institution for the benefit of each tenant. Each landlord shall maintain each such account as escrow agent and shall not withdraw funds from such account except as provided in subdivision (2) of this subsection." Subdivision (2) does not permit a landlord to withdraw funds from a security deposit escrow fund to pay the landlord's personal expenses.

The defendant argues that § 47a-21 (h) (1) did not apply to her during the lease term because she had fewer than four rental units at the time. In making this argument, the defendant relies on § 47a-21 (k) (2), which provides in relevant part: "Any person who knowingly and wilfully violates the provisions of subsection (h) of this section . . . shall be subject to a fine of not more than five hundred dollars or imprisonment of not

more than thirty days or both for each offense. It shall be an affirmative defense under the provisions of this subdivision that at the time of the offense, such person leased residential real property to fewer than four tenants who paid a security deposit." That statute though provides an affirmative defense only to the *criminal penalties* set forth in subsection (k) (2) if, at the time of the offense, the defendant leased residential real property to fewer than four tenants who paid a security deposit. General Statutes § 47a-21 (k) (2). In the present *civil* case, however, the defendant was not subject to a fine or imprisonment. Moreover, § 47a-21 (*l*) provides in relevant part that "[n]othing in this section shall be construed as a limitation upon . . . the right of any tenant to bring a civil action permitted by the general statutes or at common law." Accordingly, assuming that the defendant had fewer than four tenants during the lease term, § 47a-21 (k) (2) does not relieve her of her obligations under § 47a-21 (h).[4]

We also are unpersuaded by the defendant's argument that a violation of § 47a-21 (h) is not a CUTPA violation. In support of this argument the defendant relies on this court's decision in *Tarka* v. *Filipovic*, 45 Conn. App. 46, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997). Such reliance is misplaced. In *Tarka*, this court affirmed the trial court's acceptance of the finding of the attorney referee that the defendants' failure to place the plaintiff's security deposit in an interest bearing account did not rise to the level of a CUTPA violation. Id., 55–56. In doing so, this court noted that whether a practice violates CUTPA is a question of fact. Id., 55. The court also noted that "[t]he attorney referee determined that [the defendants'] conduct arose out of the defendants' ignorance of their obligations." Id.

In the present case, the court specifically found that the defendant's conduct rose to the level of a CUTPA violation. Furthermore, the court in this case did not conclude that the defendant's violation of her obligations with respect to the plaintiff's security deposit was the result of ignorance. To the contrary, the court concluded that the defendant, who "is a former Realtor and has been involved in multiple rental relationships on her properties," showed "utter indifference to her obligations as a landlord . . . ." The court further noted that the defendant's violations of § 47a-21 with respect to other tenants continued up to and through the trial. Consequently, the factual findings in this case are markedly different than those presented in *Tarka*. Just as this court did not disturb the trial court's factual finding in *Tarka* regarding whether the defendants' conduct rose to the level of a CUTPA violation; *Tarka* v. *Filipovic*, supra, 45 Conn. App. 56; we will not disturb the trial court's finding in the present case. We cannot say that the court erred in concluding that the manner in which the defendant handled the defendant's security

deposit constituted a CUTPA violation.

Moreover, as discussed in part I A 1 of this opinion, the evidence in the record supports the trial court's determination that certain itemized damages assessed by the defendant were pretextual. The defendant does not argue that pretextual charges cannot form the basis of a CUTPA violation. Instead, she repeats her argument that the disputed charges were not pretextual and that this case is nothing more than a contract dispute between the parties over the reasonableness of the repairs the defendant made and for which she charged the plaintiff. Given our conclusion in part I A 1 of this opinion, the defendant's argument is without merit.

We also disagree with the defendant's contention that the plaintiff failed to prove that he suffered an ascertainable loss. The issue of whether the plaintiff suffered an ascertainable loss as a result of the defendant's CUTPA violation is a question of fact, which we review under the clearly erroneous standard. See *Cohen* v. *Meyers*, 175 Conn. App. 519, 554, 167 A.3d 1157, cert. denied, 327 Conn. 973, 174 A.3d 194 (2017).

"The ascertainable loss requirement [of General Statutes § 42-110g] is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation. . . . CUTPA, however, is not limited to providing redress only for consumers who can put a precise dollars and cents figure on their loss . . . as the ascertainable loss provision do[es] not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case. . . . Rather . . . [d]amage . . . is only a species of loss . . . hence [t]he term loss necessarily encompasses a broader meaning than the term damage. . . . Accordingly . . . for purposes of § 42-110g, an ascertainable loss is a deprivation, detriment [or] injury that is capable of being discovered, observed or established. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no need to allege or prove the amount of the actual loss. . . .

"Of course, a plaintiff still must marshal some evidence of ascertainable loss in support of her CUTPA allegations, and a failure to do so is indeed fatal to a CUTPA claim . . . .

"A plaintiff also must prove that the ascertainable loss was caused by, or a result of, the prohibited act. General Statutes § 42-110g (a) . . . . When plaintiffs seek money damages, the [as a result of] language . . . in § 42-110g (a) requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. . . . [P]roximate cause is [a]n actual cause that is a

substantial factor in the resulting harm . . . . The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Kelly* v. *Kurtz*, 193 Conn. App. 507, 535–36, 219 A.3d 948 (2019).

In the present case, the evidence in the record supports the court's finding that the defendant assessed pretextual damages to the plaintiff. This evidence also demonstrates that the plaintiff suffered an ascertainable loss as a result of the withholding of the portion of the security deposit that was legitimately owed to him. See *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, 667, 166 A.3d 857 ("Whenever a consumer has received something other than what [the consumer] bargained for, [the consumer] has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Internal quotation marks omitted.)), cert. denied, 327 Conn. 927, 171 A.3d 60 (2017); see also *Larobina* v. *Home Depot, USA, Inc.*, 76 Conn. App. 586, 597, 821 A.2d 283 (2003) (concluding that trial court improperly concluded that plaintiff failed to prove ascertainable loss because "plaintiff did receive something other than that for which he had bargained; he bargained to have carpeting installed at a price of $7.37 per square yard, but he got nothing").

Consequently, we conclude that the trial court properly found that the defendant violated CUTPA.

C

The defendant's final claim is that the trial court abused its discretion in awarding punitive damages in the amount of $19,867.13. The defendant argues that her conduct did not warrant an award of punitive damages. We disagree.

We begin our analysis with the standard of review. "Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d)[5] . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. . . . In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Footnote added; footnote omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 446, 78 A.3d 76 (2013).

"We note also that the CUTPA statutes do not provide a method for determining punitive damages . . . ." (Internal quotation marks omitted.) *Carrillo* v. *Gold-*

*berg*, supra, 141 Conn. App. 313. Additionally, "[u]nlike punitive damages under Connecticut common law, punitive damages under CUTPA are focused on deterrence, rather than mere compensation." *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 140, 30 A.3d 703, cert. granted, 303 Conn. 904, 31 A.3d 1179 (2011) (appeal withdrawn January 27, 2012), and cert. granted, 303 Conn. 905, 31 A.3d 1180 (2011) (appeal withdrawn January 26, 2012).[6]

In the present case, the trial court awarded punitive damages on the basis of the "defendant's indifference to the law when engaged in this transaction" and "her continued inexcusable failure to segregate her current security deposits from her personal accounts after the commencement of this action, when at the latest she should have learned what the law is." (Emphasis omitted.) The court then awarded punitive damages in the amount of $19,867.13, as determined by the amount of the security deposit of $12,730 and pretextual charges of $7137.13. As stated previously in this opinion, the court also provided the following basis for its award of punitive damages under CUTPA: "The [trial] court has concerns for her current tenants that their funds may not be secured. This utter indifference to her obligations as a landlord, when taken in context with what the court [found] were pretextual damages being assessed to the plaintiff, is inexcusable and indefensible and leaves the court with no choice but to award CUTPA and punitive damages to the plaintiff in this matter." Additionally, the court stated that the defendant "must be provided with an incentive to comply with security deposit laws and this judgment will hopefully help protect future tenants of the defendant."

In her principal brief, the defendant advances several arguments in support of her claim that the trial court erred in awarding punitive damages. The defendant argues that her actions constituted a good faith claim as defined under § 47a-21 (j) (2), and argues further that the plaintiff did not suffer an ascertainable loss as a result of her actions. Additionally, the defendant contends that her actions did not involve a reckless indifference to the plaintiff's rights or an intentional and wanton violation of the plaintiff's rights. Also, the defendant argues that punitive damages are ordinarily not recoverable for breach of contract. Last, the defendant argues that the calculation of the punitive damages was excessive. We address each argument in turn.

First, the defendant argues that her actions constituted a good faith claim as defined under § 47a-21 (j) (2). Section 47a-21 (j) is titled "Investigation of complaints by commissioner. Order. Jurisdiction. Regulations," and provides the procedural parameters in which the banking commissioner may receive, investigate, and remedy complaints regarding any alleged violations of subsections (b), (d), (h), or (i) of § 47a-21.[7]

Section 47a-21 (j) (2) provides: "The commissioner shall not have jurisdiction over (A) the failure of a landlord to pay interest to a tenant annually under subsection (i) of this section, or (B) the refusal or other failure of the landlord to return all or part of the security deposit if such failure results from the landlord's good faith claim that such landlord has suffered damages as a result of a tenant's failure to comply with such tenant's obligations, regardless of whether the existence or amount of the alleged damages is disputed by the tenant. For purposes of this section, 'good faith claim' means a claim for actual damages suffered by the landlord for which written notification of such damages has been provided to the tenant in accordance with the provisions of subdivision (2) of subsection (d) of this section."

The defendant, here, fails to explain how this statutory provision is applicable to her claim that the trial court erred in awarding punitive damages. The jurisdictional parameters of the banking commissioner are not at issue in the present case. Furthermore, the court concluded that the defendant's claims were not made in good faith when it found that certain itemized damages assessed by the defendant were fabricated and pretextual and that her handling of the security deposits of the plaintiff and other tenants showed an utter indifference to her obligations as a landlord. See *Cianci* v. *Originalwerks, LLC*, 126 Conn. App. 18, 22, 16 A.3d 705 ("[w]e will not disturb the court's finding unless it is clearly erroneous"), cert. denied, 301 Conn. 901, 17 A.3d 1043 (2011).

Second, the defendant argues that the plaintiff did not suffer an ascertainable loss as a result of the defendant's actions. As stated in part I B of this opinion, the plaintiff suffered an ascertainable loss due to the defendant's withholding of the plaintiff's security deposit that she legitimately owed to him.

Third, the defendant argues that none of her actions involved a reckless indifference to the plaintiff's rights or an intentional and wanton violation of the plaintiff's rights warranting an award of punitive damages. We disagree.

Here, the court found, and the record supports, that the defendant failed to comply with § 47a-21 (d) and assessed pretextual damages to the plaintiff. Moreover, the evidence showed that she violated § 47a-21 (h). In particular, the defendant testified that she did not believe that she was allowed to use the security deposit for personal purposes, yet the evidence demonstrated that she did so. Consequently, the court found that the defendant's actions were "inexcusable and indefensible" and constituted "unethical, unscrupulous activity in violation of a stated public policy set forth by the Connecticut legislature and caused a substantial injury to the plaintiff." These findings are not clearly errone-

ous and are sufficient to support an award of punitive damages. See *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 486, 871 A.2d 981 (2005) ("[t]he trial court's findings that the defendant's conduct was 'reprehensible,' that its conduct of 'bilking' its customers was not isolated and that this initial conduct of making unauthorized charges was 'exacerbated' by the defendant's use of the phony business card constitute evidence of reckless indifference to and intentional and wanton violation of the plaintiff's rights").

The defendant's fourth argument is that punitive damages are ordinarily not recoverable for breach of contract. The punitive damages award in this case, however, was not based on a simple breach of contract finding but, rather, was based on a CUTPA violation for unscrupulous conduct. The court clearly based its award of punitive damages on the defendant's actions in failing to comply with her statutory obligations as a landlord.

Finally, the defendant argues that the trial court's award of punitive damages was excessive. The defendant contends that the award of punitive damages is excessive "by any objective determination." We note that, "[w]hile the CUTPA statutes do not provide a method for determining punitive damages, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages." (Internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim,* supra, 131 Conn. App. 139–40.

In the present case, the trial court determined the award of punitive damages by adding together the amount of the security deposit and the pretextual charges, resulting in CUTPA punitive damages of $19,867.13. This amount was approximately one and one-half times the security deposit paid by the plaintiff and less than the statutory damages the court awarded pursuant to § 47a-21 (d) (2). The stated purpose of the court's punitive damages award was to deter the defendant from continuing to flout her obligations under the security deposit statute by providing the defendant "with an incentive to comply with security deposit laws . . . ." Furthermore, the court stated that "this judgment will hopefully help protect future tenants of the defendant." Accordingly, given the actual amounts in dispute, the defendant's conduct, both as to the plaintiff and her other tenants, and the stated purpose of the court's punitive damages award, we conclude that the trial court's award of punitive damages was not excessive. See *Ulbrich* v. *Groth,* supra, 310 Conn. 456 ("[a]lthough the trial court's punitive damages award in the present case undoubtedly was a large one, especially in light of the large size of the compensatory damages award, we cannot conclude that the award constituted a manifest abuse of discretion or that an

injustice was done"); see also *Votto* v. *American Car Rental, Inc.*, supra, 273 Conn. 486 (trial court's awarding of punitive damages equal to three times amount of unauthorized charges to plaintiff's credit card was not abuse of discretion).

In sum, on review of the record, we conclude that the trial court did not abuse its discretion in awarding punitive damages to the plaintiff. The court based its determination on evidence that showed that the defendant failed to properly safeguard the plaintiff's security deposit and then attempted to avoid returning the security deposit to the plaintiff by fabricating pretextual charges. Furthermore, the court clearly articulated that the purpose of the punitive damages award was to deter the defendant from continuing her improper use of her tenants' security deposits and to protect future tenants from the defendant improperly managing their security deposits. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, supra, 131 Conn. App. 140 ("[u]nlike punitive damages under Connecticut common law, punitive damages under CUTPA are focused on deterrence, rather than mere compensation").

II

THE PLAINTIFF'S CROSS APPEAL

In his cross appeal, the plaintiff claims that the trial court erred in holding that he was not entitled, pursuant to § 47a-11a, to a return of rent payments he made after vacating the premises. Additionally, the plaintiff claims that the court erred in denying his common-law claim for money had and received. We disagree with both claims.

A

The plaintiff first claims that the court erred by not awarding him damages for rent he paid after he moved out of the premises and the defendant had the opportunity to re-let the premises. Specifically, the plaintiff argued before the trial court that the defendant should be required to return to the plaintiff all rents she received after February, 2017, because the lease was terminated by operation of law due to the defendant's violation of § 47a-11a.

Section 47a-11a provides: "(a) If the tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental in mitigation of damages.

"(b) If the landlord fails to use reasonable efforts to rent the dwelling unit at a fair rental, the rental agreement is deemed to be terminated by the landlord as of the date the landlord has notice of the abandonment."

The plaintiff argued that the defendant admitted at trial that the plaintiff abandoned the premises during the winter of 2016 through 2017 and testified further that she was present in April, 2017, when a moving truck removed the remainder of the plaintiff's personal

property from the premises. Consequently, he argued that, by operation of law, the lease agreement was terminated by March, 2017, and the defendant had no right to any rent from that point forward.

The court rejected the plaintiff's claim on the basis of its factual findings that "[t]he parties attempted to negotiate an early exit for the plaintiff but when the negotiations failed [the plaintiff] indicated he would fulfill his obligations under the lease and he left items (albeit very few items) in storage at the premises until at least the end of April, 2017." The court further found that the plaintiff "did not hand over the keys to the premises and he continued to pay rent . . . ."

On appeal, the plaintiff does not challenge the court's factual findings. Instead, he argues that, "[a]ccepting all of the facts found by the trial court, the plaintiff contends that the payments were made without the plaintiff's obligation to pay or the defendant's right to receive them." He describes the issue as a matter of law subject to plenary review. Thus, we understand the plaintiff's claim to be that the court improperly construed § 47a-11a by concluding that his conduct did not constitute "abandonment" under the statute.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 629, 882 A.2d 98, cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005). We begin with the text of the statute and its relationship to other statutes. See General Statutes § 1-2z.

Section 47a-11a does not provide a statutory definition of the terms "abandons" or "abandonment"; however, a statutory definition is provided for "abandonment" in General Statutes § 47a-11b. Thus, we look to § 47a-11b for guidance in our interpretation of the terms "abandons" and "abandonment" in § 47a-11a. See *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 12, 680 A.2d 964 (1996) ("[w]hen construing a statute, we may look for guidance to other statutes relating to the same general subject matter, as the legislature is presumed to have created a consistent body of law"); *BayBank Connecticut, N.A.* v. *Thumlert*, 222 Conn. 784, 790, 610 A.2d 658 (1992) ("[s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law" (internal quotation marks omitted)).

Section 47a-11b provides in relevant part: "(a) For the purposes of this section, 'abandonment' means the occupants have vacated the premises without notice to the landlord and do not intend to return, which intention may be evidenced by the removal by the occupants or their agent of substantially all of their possessions and

personal effects from the premises and either (1) non-payment of rent for more than two months or (2) an express statement by the occupants that they do not intend to occupy the premises after a specified date. . . .” Thus, in accordance with the statutory definition of abandonment in § 47a-11b, we construe the terms abandons and abandonment in § 47a-11a as meaning that the tenant has vacated the premises without notice to the landlord and does not intend to return. As ascertained from the text of § 47a-11b, this intention may be evidenced by the removal of substantially all of the tenant's possessions and personal effects from the premises and either (1) nonpayment of rent for more than two months or (2) an express statement by the tenant that he does not intend to occupy the premises after a specified date.

Applying this definition, we conclude that the court correctly determined that the plaintiff did not abandon the premises before the end of the lease term. The plaintiff did not vacate the premises without notice to the defendant. To the contrary, he tried to negotiate an early termination of the lease agreement. When those negotiations failed, he expressly stated his intention to fulfill his obligations under the lease, which is the opposite of abandoning the premises. In an e-mail to the defendant's attorney, the plaintiff stated: “I will just continue the lease as is. I will not be present but will adhere to the conditions of the lease. I will provide the absolute minimal yet compliant services to the home. . . . I will pay monthly rent. I will leave water and electric on and pay those bills. I will keep thermostat at minimal level to ensure no freezing occurs. . . . I will keep the right to have minimal furniture in the home to then use when I choose.” Consistent with his e-mail, there was never a period of more than two months when the plaintiff did not pay rent. In fact, as previously discussed in this opinion, the plaintiff testified that, in addition to rent, he continued to pay for landscaping on the property through the end of the lease term. Finally, the plaintiff did not turn over the keys to the premises and request the return of his security deposit until the end of the lease term. Given these facts, none of which the plaintiff challenges on appeal, we agree with the court that the plaintiff never abandoned the premises and did not trigger an early termination of the lease agreement under § 47a-11a.

B

Last, the plaintiff claims that the court improperly held that he failed to prove his common-law claim for money had and received. The plaintiff contends that he is entitled to recover rent in the amount of $6365 and common charges in the amount of $435 that were paid for each month from March through June, 2017.

“To prevail on a claim for money had and received, a plaintiff must prove both the lack of authority to

authorize the payment and that it is inequitable for the recipient to retain it. . . . Because a cause of action for money had and received requires proof of two prongs, this court may affirm the judgment of the trial court on proof that the payment was authorized or that its retention by the defendant is equitable under all of the circumstances." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Stratford* v. *Winterbottom*, 151 Conn. App. 60, 77–78, 95 A.3d 538, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014).

"Our Supreme Court has stated that when money is paid by one on the basis of a mistake as to his rights and duties and the recipient has no right in good conscience to retain the money, an action of indebitatus assumpsit may be maintained to recover the money, regardless of whether the mistake was one of fact or of law. . . . The action of indebitatus assumpsit for the recovery of money had and received and for money paid . . . is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights. . . . Stated another way, [t]he action for money had and received is an equitable action to recover back money paid by mistake where the payor is free from any moral or legal obligation to make the payment and the payee in good conscience has no right to retain it. Is the plaintiff in this action, as between it and the defendant, in equity and good conscience entitled to the money? If it is, then it is entitled to recover. The real ground of recovery is the equitable right of the plaintiff to the money. . . .

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . .

"We will reverse a trial court's exercise of its equitable powers only if it appears that the trial court's decision is unreasonable or creates an injustice. . . . [E]quitable power must be exercised equitably . . . [but] [t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Stratford* v. *Wilson*, 151 Conn. App. 39, 46–48, 94 A.3d 644, cert. denied, 314

Conn. 911, 100 A.3d 403 (2014).

In its memorandum of decision, the trial court found that the plaintiff failed to prove that he provided payments to the defendant under the mistaken belief that he had an obligation to do so. The court found that the plaintiff signed the lease agreement, continued to use the premises for storage until April, 2017, and failed to repudiate the lease agreement at any point during the tenancy. Thus, the court concluded that the plaintiff failed to prove his common-law claim of money had and received.

On appeal, the plaintiff argues that the court's conclusion was improper because the plaintiff presented evidence showing that he stated in writing to the defendant's attorney that he would no longer be present at the premises after October, 2016. Also, the plaintiff argues that the defendant testified to the following: the plaintiff had abandoned the premises in the winter of 2016–2017, the defendant was physically present at the premises when the remainder of the plaintiff's property was removed from the premises, and she did not attempt to re-let the premises prior to July, 2017. We are not persuaded.

The court's determination that the plaintiff was obligated to make the monthly rental payments in accordance with the terms of the lease agreement is supported by the record demonstrating that the plaintiff signed the lease agreement, communicated to the defendant's attorney that he would abide by the terms of the lease, and failed to repudiate the lease agreement at any point during the tenancy. Furthermore, as we also concluded in part II A of this opinion, there was ample evidence to support the court's conclusion that a duty to mitigate damages pursuant to § 47a-11a never materialized and, thus, the plaintiff failed to prove that he had paid his monthly rent by mistake and that he was free from any moral or legal obligation to make the rental payments. Therefore, having reviewed the record, we conclude that the trial court reasonably concluded that the plaintiff failed to prove his claim of money had and received.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court appears to have made a computational error regarding the amount properly withheld by the defendant. Although it found the total amount of the justified deductions from the security deposit was $7429.92, the actual total of the individual charges the court found to be justified deductions was $7429.72. Additionally, the trial court found that the defendant improperly charged the plaintiff $244.66 for HVAC repairs and $838.18 for plumbing repairs even though the evidence showed that the actual amounts claimed were $244.60 and $836.18, respectively. These errors do not affect our analysis of the parties' claims on appeal because the court did not award the plaintiff damages based on the amount of the improper charges and because the defendant does not challenge on appeal the court's calculation of the improper charges.

[2] The court did not identify the contractual basis for its conclusion that the plaintiff was entitled to attorney's fees on his breach of contract claim.

The only attorney's fees provision in the lease agreement provides that the defendant was entitled to collect attorney's fees from the plaintiff if it became necessary for her "to employ an attorney to enforce any of the conditions or covenants [of the lease agreement] . . . ." The defendant does not challenge on appeal the court's authority to award attorney's fees with respect to the plaintiff's breach of contract claim.

[3] General Statutes § 47a-21 (h) provides in relevant part: "(1) Each landlord shall immediately deposit the entire amount of any security deposit received by such landlord from each tenant into one or more escrow accounts established or maintained in a financial institution for the benefit of each tenant. *Each landlord shall maintain each such account as escrow agent and shall not withdraw funds from such account except as provided in subdivision (2) of this subsection.*

"(2) The escrow agent may withdraw funds from an escrow account to: (A) Disburse the amount of any security deposit and accrued interest due to a tenant pursuant to subsection (d) of this section; (B) disburse interest to a tenant pursuant to subsection (i) of this section; (C) make a transfer of the entire amount of certain security deposits pursuant to subdivision (3) of this subsection; (D) retain interest credited to the account in excess of the amount of interest payable to the tenant under subsection (i) of this section; (E) retain all or any part of a security deposit and accrued interest after termination of tenancy equal to the damages suffered by the landlord by reason of the tenant's failure to comply with such tenant's obligations; (F) disburse all or any part of the security deposit to a tenant at any time during tenancy; or (G) transfer such funds to another financial institution or escrow account, provided such funds remain continuously in an escrow account. . . ." (Emphasis added.)

[4] Because the defendant's reliance on § 47a-21 (k) (2) is misplaced, we need not address the defendant's claim that the court's finding that the defendant owned four rental properties was clearly erroneous.

[5] General Statutes § 42-110g provides in relevant part: "(a) . . . The court may, in its discretion, award punitive damages . . . .

"(d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

[6] Under Connecticut common law, punitive damages are limited to litigation costs. See *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 447–48, 152 A.3d 1183 (2016).

[7] General Statutes § 47a-21 (j) (1) provides: "Except as provided in subdivision (2) of this subsection, the commissioner may receive and investigate complaints regarding any alleged violation of subsections (b), (d), (h) or (i) of this section. For the purposes of such investigation, any person who is or was a landlord shall be subject to the provisions of section 36a-17. If the commissioner determines that any landlord has violated any provision of this section over which the commissioner has jurisdiction, the commissioner may, in accordance with section 36a-52, order such person to cease and desist from such practices and to comply with the provisions of this section."

---